◼ In the Matter of the Claim of RONALD GRAMZA, Respondent, v BUFFALO BOARD OF EDUCATION et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent. [3 NYS3d 435]—

McCarthy, J. Appeal from a decision of the Workers' Compensation Board, filed April 1, 2013, which, among other things, ruled that claimant did not violate Workers' Compensation Law § 114-a.

Claimant, a teacher, was injured when he tripped over electrical cords and fell at work. He has an established claim for injuries to his left shoulder and neck. In August 2010, the self-insured employer raised the issue of attachment to the labor market and sought the testimony of claimant and his medical providers on the issue. A Workers' Compensation Law Judge (hereinafter WCLJ) denied the employer's request for claimant's testimony, but continued the matter for cross-examination of two of claimant's medical providers on the outstanding issues of degree of disability and work capacity.

Thereafter, the employer alleged a violation of Workers' Compensation Law § 114-a and sought to admit evidence of video and surveillance reports of claimant's activities between May and September 2010. The WCLJ ruled that the evidence was inadmissible. Following a determination by the Workers' Compensation Board that the surveillance materials were admissible, the WCLJ did not review the materials again—despite over a year elapsing between the time that the evidence was submitted and the hearing on remittal—but nevertheless concluded that the surveillance materials were not inconsistent with statements that claimant had made to his physicians, and that claimant has a permanent impairment of 75% and continues to be involuntarily retired. The Board affirmed, finding that claimant did not violate Workers' Compensation Law § 114-a, the surveillance video did not affect the issue regarding the degree of disability, claimant has a marked (75%) permanent partial disability, and the issues of labor market attachment and involuntary retirement were not properly before it because they had been raised for the first time on appeal. This appeal ensued.

We reverse. Initially, the employer argues that the record does not contain substantial evidence to support the Board's finding with respect to Workers' Compensation Law § 114-a. Specifically, the employer maintains that the video surveillance shows images of claimant engaged in physical activity that is inconsistent with representations he made to physicians. Under Workers' Compensation Law § 114-a (1), a claimant may be disqualified from receiving workers' compensation benefits "[i]f for the purpose of obtaining compensation . . . or for the purpose of influencing any determination regarding any such payment, [he or she] knowingly makes a false statement or representation as to a material fact." While the Board's "determination of whether a claimant has violated Workers' Compensation Law § 114-a will be upheld if it is supported by substantial evidence in the record" (*Matter of Borgal v Rochester-Genesee Regional Transp. Auth.*, 108 AD3d 914, 915 [2013]), this Court will reverse if, as herein, the determination is based upon "factual inaccuracies and mischaracterizations of" the record (*Matter of Donato v Aquarian Designs, Inc.*, 96 AD3d 1302, 1303 [2012]; *see Matter of Engoltz v Stewart's Ice Cream*, 91 AD3d 1066, 1067 [2012]; *Matter of Passari v New York City Hous. Auth.*, 13 AD3d 853, 854-855 [2004]).

The record reflects that during his July 2010 independent medical examination, claimant stated that he was able to mow his lawn with a self-propelled mower and could take two-mile

walks several times a week, but that his wife raked and cleaned up their yard and his neighbor performed snow removal. He also stated that he did no indoor home maintenance activities. In contrast, surveillance video performed *on the same day* showed him performing yard work around his house for over two hours, including raking, using a large walk-behind mower, overhead tree trimming, cleaning up trimmings, and carrying a garbage bag to the curb—all with no sign of having a neck or shoulder disability. Video surveillance on other days also showed him using a leaf blower, lifting a wheelbarrow and lumber, painting with a roller and brush, digging with a shovel, and standing on a ladder while using a power drill, wrench and hammer during the installation of a hot tub.

Notably, the examining physician had determined in July 2010 that claimant had a marked partial disability that required limiting repetitive movement of the upper extremities and lifting more than 10 pounds to shoulder level. After viewing the video surveillance, the physician concluded that "claimant clearly is capable of doing far more home-based activities than he admitted to during my independent examination." The physician therefore revised his findings, concluding that claimant has only a mild partial disability and no functional disability. Under these circumstances, the Board's finding that "[t]he video surveillance does not show any images of the claimant engaging in physical activities inconsistent with any representation he had made to any of the parties' doctors" is not supported by substantial evidence in the record (*see Matter of Passari v New York City Hous. Auth.*, 13 AD3d at 855).

The Board's argument that *Matter of Passari v New York City Hous. Auth.* (*supra*) is not controlling because the employer did not obtain claimant's testimony, despite the fact that it was allegedly in no way prevented from doing so, is based upon a misinterpretation of *Passari*. Our decision in *Passari* did not rest solely upon the claimant's evasive testimony in that case, or the fact that the claimant was videotaped performing activities related to his profession; nor did our decision in that case imply in any way that a doctor's statement regarding a claimant's description of his or her injuries should be disregarded as "second-hand" information for purposes of Workers' Compensation Law § 114-a. Rather, in concluding that section 114-a had been violated, we noted that the claimant's doctor confirmed that the claimant "fail[ed] to affirmatively disclose highly relevant information" (*id.*). Similarly here, the physician who performed the independent

medical examination stated that the surveillance revealed claimant to be "capable of doing far more home-based activities than he admitted to during [the] independent examination."

In light of the foregoing, this matter must be remitted to the Board for a determination of whether claimant's failure to disclose the extent of his abilities was material, and done both knowingly and for the purpose of obtaining benefits (*see Matter of Donato v Aquarian Designs, Inc.*, 96 AD3d at 1304; *Matter of Johnson v New York State Dept. of Transp.*, 305 AD2d 927, 928 [2003])—issues that the Board did not reach in light of its conclusion that claimant made no false representations. Similarly, inasmuch as the Board concluded, without explanation, that the surveillance materials did "not affect[ ]" the issue regarding claimant's degree of disability—and it is therefore unclear that the Board ever considered the surveillance materials in that regard—the Board should also reconsider on remittal the degree of claimant's disability in light of all the evidence. Finally, the Board's finding that the issue of claimant's attachment to the labor market was never raised before the WCLJ is unsupported by the record and, thus, that issue must also be considered on remittal.

Peters, P.J., Garry and Rose, JJ., concur. Ordered that the decision is reversed, without costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.